# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| **MATHIESON RAY FRIEMON,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No.: 4:18-cv-702** |
| ) | |
| **vs.** ) | |
| ) | |
| **NATIONAL CARRIERS'** ) | |
| **CONFERENCE COMMITTEE,** ) | |
| ) | |
| **UNION PACIFIC RAILROAD,** ) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT-EMPLOYEE RETIREMENT INCOME SECURITY ACT

**COMES NOW** Plaintiff Mathieson Ray Friemon, by and through the undersigned attorney, and for his cause of action against Defendant National Carriers' Conference Committee, Aetna, MCMC and Union Pacific Railroad respectfully states the following:

## INTRODUCTION

1. Plaintiff Mathieson Ray Friemon brings this suit under 29 U.S.C. §1001 et seq., commonly known as the Employee Retirement Income Security Act (ERISA), as a participant under the Maintenance of Way Employees' Supplemental Sickness Benefits Plan ("Plan").

2. The Plan provides disability benefits for certain employees of Defendant Union Pacific Railroad.

## PARTIES

3. Plaintiff Matheson Friemon is a resident of Desoto, Missouri.

4. National Carriers' Conference Committee ("NCCC") is the plan administer for the Plan, which is a multiemployer plan as that term is defined in 29 U.S.C. § 1002 (37)(A).

5. Union Pacific Railroad ("UPRR") is a foreign corporation, incorporated in Nebraska, having their principal place of business in Nebraska, and licensed to do business as a foreign corporation or a foreign insurance company in the State of Missouri.

6. Aetna was the third party administrator hired by NCCC to provide administrative services including making benefit eligibility determinations and as such was a fiduciary with respect to the Plan as defined by 29 U.S.C. § 1002 (21)(A).

7. MCMC LLC ("MCMC") made the actual determination regarding Matheson Friemon's eligibility for benefits, and as such, was a fiduciary with respect to the Plan as defined by 29 U.S.C. § 1002 21(A).

5. At all relevant times Mr. Friemon was an employee of UPRR and a member the Maintenance of Way Union and was eligible for Supplemental Sickness benefits ("SSB") under the Plan as a vested participant in the Plan.

## JURISDICTION AND VENUE

6. This Court has federal question jurisdiction under 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331 because all claims arise under ERISA, 29 U.S.C. § 1001, et seq.

7. Venue in this Court is proper pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391 (b) and (c).

## FACTUAL ALLEGATIONS

8. At all relevant times the Plan is an employee benefit plan as defined by 29 U.S.C.§1002(3) as it is an employee pension benefit plan.

9. Mr. Friemon was in a head-on automobile crash on August 9, 2015.  He was airlifted to Mercy Hospital in St. Louis where he was diagnosed and treated for : multiple

fractures on his left arm, head and face; concussion with loss of consciousness and acute blood loss.

10. During his time at Mercy Hospital, Mr. Friemon underwent four surgeries including three surgeries on his left arm and one surgery to repair his broken sinus cavity.

11. Mr. Friemon was discharged on August 21, 2015 and at the time could only walk unassisted 300 feet and required total assistance with activities of daily living.

12. Mr. Friemon underwent intensive physical and occupational therapy three times a week from August 26, 2015 through December 18, 2015 in an effort to regain the ability to perform his activities of daily living.

13. Defenant UPRR was aware of Mr. Friemon's injuries and notified him via certified mail on August 11, 2015 that he was granted a Medical Leave of Absence.

14. Defendant UPRR assisted Mr. Friemon with obtaining sickness benefits from the U.S. Railroad Retirement Board.

15. Defendant UPRR, by and through its agents and employees, did not notify Mr. Friemon that he needed to apply for Supplemental Sickness benefits under the Plan by making a specific claim to Aetna until February 2016.

16. Aetna denied Mr. Freimon's claim for SSB on March 10, 2016.

17. Mr. Friemon appealed Aetna's decision to the NCCC on May 10, 2016.

18. NCCC did not make a decision on Mr. Friemon's appeal.

19. In a letter dated Wednesday, June 1, 2016 MCMC wrote to Mr. Friemon and stated that NCCC had submitted his request to MCMC for an appeal and that he had the right to submit additional information within 5 business days following receipt of the June 1, 2016 letter.

20. Without allowing 5 business days from the receipt of its Wednesday, June 1, 2016 letter, MCMC issued a "Notification of Denial," to Mr. Friemon dated Tuesday, June 7, 2017 stating that it had made a "final and binding," decision to deny SSB benefits on behalf of the Plan.

## COUNT I-DENIAL OF BENEFITS v. NCC

21. Plaintiff hereby alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

22. Defendant NCC failure to pay Mr. Frieman benefits under the Plan was not based on substantial evidence and was contrary to the terms of the Plan.

23. As a direct and proximate result of the acts and/or omissions by NCC and its agents, Mr. Frieman had benefits wrongfully denied that were owed to her under the Plan.

24. NCC is responsible to pay the benefits due under the terms of the Pension Plan, together with prejudgment interest, attorneys fees and costs pursuant to 29 U.S.C. § 1132(g)(1) to the date of payment of the unpaid benefits.

WHEREFORE, Plaintiff Mathieson Frieman respectfully prays for judgment against NCC in the amount of unpaid benefits, attorney's fees and costs pursuant to U.S.C. § 1132(g), and for any other such relief as the Court deems just and proper.

## COUNT II-BREACH OF FIDUCIARY DUTY

25. Plaintiff hereby alleges and incorporates by reference each and every allegation set forth above as though fully set forth herein.

26. Defendant UPRR had exclusive control over the application process for its eligible employees to apply for SSB.

27. UPRR owed a fiduciary duty to act for the exclusive purposes of providing benefits to its employees with the care and skill and diligence under the circumstances in accordance with the documents and instruments governing the Plan.

28. UPRR breached its fiduciary duties when it failed to comply with its obligations under 29 U.S.C. § 1104 to act for the exclusive purpose of providing benefits to Plan participants and beneficiaries when they failed to inform Mr. Frieman of the requirement to apply for SSB within 60 days of the last day worked and failed to provide the necessary paperwork to apply for SSB, even though UPRR approved him for FMLA leave, processed his application for railroad sickness benefits and had actual knowledge of the nature and extent of his disabling injuries.

29. The acts and/or omissions of UPRR as outlined above violated ERISA and constitute a breach of the fiduciary duty owed to Mr. Frieman under 29 U.S.C. § 1104.

30. As a direct and proximate cause of the breach of fiduciary duty owed to Mr. Frieman by UPRR as alleged above, Mr. Frieman has incurred financial expenses resulting from retaining counsel to appeal the wrongful denial of benefits owed to him under the Plan.

31. As a direct and proximate cause of the breach of the fiduciary duty owed to him by UPRR, Mr. Frieman has suffered actual harm in his reliance on the misrepresentations made by UPRR and its agents.

32. The allegations above merit the imposition of an equitable relief under 29 U.S.C. § 1132(a)(3), including specific performance, equitable estoppel and surcharge, in order to compensate Mr. Frieman for the losses incurred by him.

WHEREFORE, Plaintiff Mathieson Frieman respectfully prays for judgment against UPRR and the imposition of equitable remedies and the imposition of an equitable surcharge in

the amount of loss incurred by Plaintiff, plus pre-judgment and post-judgment interest, the award of attorney's fees and costs and for such relief as the Court deems just and proper.

GALLAGHER DAVIS, LLP

/s/ *Matthew R. Davis*

Matthew R. Davis
2333 S. Hanley Road
 St. Louis, Missouri 63144
(314) 725-1780
Fax (314) 725-0101
matt@gallagherdavis.com

Attorneys for Plaintiff